United States District Court
Southern District of Texas
**ENTERED**
September 06, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Kandice Marie Kropelnicki,<br>*Plaintiff,* | § § § | |
| v. | § § | Civil Action H-20-3377 |
| Kilolo Kijakazi,[1]<br>Acting Commissioner of the Social<br>Security Administration,<br>*Defendant.* | § § § § § | |

## Memorandum and Recommendation

Kandice Marie Kropelnicki appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. ECF No. 1. Pending before the court is Plaintiff's Motion for Summary Judgment, ECF No. 18, and Defendant's Motion for Summary Judgment, ECF No. 22. These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

### 1. Background and Procedural Posture

Kropelnicki applied for disability insurance benefits on January 19, 2018, and supplemental security income on January 29, 2018. *See* Tr. 169–70. The SSA denied

---

[1] Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g).

Kropelnicki's applications on May 24, 2018. *Id.* On October 3, 2019, the applications were denied on reconsideration. Tr. 171–72. At Kropelnicki's request, Administrative Law Judge (ALJ) Jessica Hodgson held a hearing on September 9, 2019, in Houston, Texas. Tr. 218, 104–44. The ALJ issued a decision on October 23, 2019, finding that Kropelnicki was disabled from February 7, 2017, through October 29, 2018, and not disabled from October 30, 2018, through the date of the decision. Tr. 28–44. On July 24, 2020, the Appeals Council denied Kropelnicki's request for review. Tr. 1–6. Kropelnicki timely appealed the ALJ's decision in this court when she filed a complaint and application to proceed in forma pauperis on July 12, 2021. *See Kropelnicki, Jr. v. Comm'r of Soc. Sec.*, H-20-mc-2747, ECF No. 1 (S.D. Tex. Sept. 25, 2020).

Kropelnicki claimed that she became disabled on February 7, 2017. Tr. 169–70. Kropelnicki was born on April 24, 1983, and was thirty-four years old on the alleged disability onset date. *Id.* Kropelnicki has an education through the first year of college. Tr. 314. Kropelnicki has not worked since February 7, 2017. Tr. 114. Kropelnicki previously worked as an office manager, administrative aide, executive assistant, receptionist, nanny, and certified nursing assistant (CNA). Tr. 115–19.

## 2. **Hearing**

At the hearing on September 9, 2019, the ALJ heard testimony from Kropelnicki and a vocational expert (VE). Tr. 104–44. Kropelnicki was represented by an attorney. Tr. 106.

Kropelnicki testified that she had not performed any work for pay or profit since February 7, 2017. Tr. 114. She had some self-employment in 2017 but clarified for the ALJ that her jewelry making for friends was a hobby rather than gainful employment. *Id.* She previously worked as an office manager since 2014. Tr. 115–16. In that position, Kropelnicki lifted twenty to twenty-five pounds, handled office supplies, and handled paperwork. Tr. 117. In 2012 and 2013, she worked as a receptionist. Tr. 117–18. In that position, she lifted fifty pounds, handled office supplies, filed paperwork, and handled phone calls. Tr. 118. In 2008 and 2009, Kropelnicki worked as a nanny for three children. Tr. 118. As a nanny, she lifted no more than twenty pounds, took the children to and from school activities, helped with housework, and helped the children with homework. Tr. 119. From 2002 to 2005, Kropelnicki worked as a CNA where she lifted around fifty pounds with assistance and worked with patients. Tr. 119–20.

Kropelnicki testified that she suffered back injuries in November 2007 and on December 6, 2016. Tr. 120. After her back injury in 2016, she suffered from leg numbness, continuous tingling in her feet, and an inability to bend down. Tr. 120–

21. Kropelnicki testified that her legs would give out after walking about a block. Tr. 121. She could not stand for more than thirty minutes. Tr. 126. She also testified that after sitting for thirty to forty-five minutes she would experience shooting pain down her left leg. Tr. 121. She could not pick up more than five pounds without significant pain. Tr. 122. She also experienced numbness in her buttocks and lower back. Tr. 123. Kropelnicki testified that she favored her right side when walking to compensate for leg numbness. Tr. 122. She had to always wear shoes to provide cushion for her back. Tr. 126. She had difficulty dressing herself. Tr. 126–27.

Kropelnicki testified that she underwent a facet injection, a steroid injection, a stimulator implantation, removal of the implantation, and consideration for laser spine surgery. Tr. 122. She was on medication until surgery could be performed for her spinal problems and nerve pain. Tr. 123–24. She was unable to start physical therapy due to muscle constriction and incontinence from nerve pain. Tr. 123. Kropelnicki's incontinence caused her to have accidents two to three times a week, and she needed to use the restroom up to three or four times an hour. Tr. 124–25.

Kropelnicki testified that her mental health problems significantly affected her ability to work. Tr. 127. She experienced significant anxiety around ethnically Indian people after being raped and stalked in 2008. Tr. 127–28. She avoided going anywhere by herself and occasionally panicked in public places. Tr. 128–29. Kropelnicki further testified that she had concentration issues for which she had

4

previously been prescribed Adderall. Tr. 130. She experienced feelings of depression and had a family history of bipolar disorder. Tr. 130–31. She was on three medications for her depression, and her symptoms had improved somewhat. Tr. 131.

Returning to Kropelnicki's past work, the VE testified that, under the Dictionary of Occupation Titles (DOT), her jobs would be classified as office manager, office receptionist, nanny, and CNA. Tr. 133.

The ALJ asked the VE what work a hypothetical individual of the same age, education, and vocational background as Kropelnicki could perform if they were limited to sedentary work; could lift ten pounds occasionally and less than ten pounds frequently; could sit for up to six hours in an eight-hour workday; must have the option to alternate between sitting and standing for three minutes after every twenty minutes of standing; could not stand or walk more than a total of two hours in an eight-hour workday; must have the option to sit for five minutes after every thirty minutes of standing or walking; could frequently use bilateral foot or hand controls; could frequently reach overhead bilaterally; could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; could occasionally balance; could occasionally be exposed to unprotected heights; could never be exposed to moving mechanical parts; could occasionally operate a motor vehicle; could occasionally be exposed to humidity, wetness, extreme cold, and vibration; could carry out simple, routine, and repetitive tasks but

not at a production rate pace; and could frequently interact with supervisors, coworkers, and the public. Tr. 134–36.

The VE testified that such a person would not be able to do any of Kropelnicki's past relevant work. Tr. 136. The VE testified that such a person would be able to work as an order clerk, address clerk, and document preparer. *Id.* Those jobs were available in significant numbers nationally. *Id.* The VE testified that portions of his testimony related to the sit-or-stand options, overhead reaching, use of hand or foot controls, and social interaction were based on his education and experience. Tr. 136–37.

The ALJ altered her hypothetical to limit the individual to occasional bilateral reaching overhead and in all directions; occasionally using bilateral hand and foot controls; never using ramps or stairs; never being exposed to unprotected heights; and only having occasional contact with the public. Tr. 137. The VE testified that such an individual would no longer be able to work as an order clerk. *Id.* The VE testified that such a person would instead be able to work as a table worker, a job which exists in large numbers nationally. Tr. 138.

The ALJ further altered both of her hypotheticals to include a requirement that the hypothetical individual be allowed additional restroom breaks consisting of three to four times an hour for five minutes during two hours of the day on up to two days a week. Tr. 139–40. The VE testified that no jobs would remain due to that amount

of off-task behavior. Tr. 140. The VE testified that a normal employer would tolerate up to ten percent of off-task time in a workday. *Id.* The VE testified that an employer would tolerate an additional break in the morning and afternoon for two to three minutes to maintain competitive employment. Tr. 141. The VE further testified that an individual who would need to miss two or more days of work per month would not be able to maintain competitive employment. *Id.* The VE testified that the sit-or-stand option would have no effect on employment at the sedentary level. Tr. 141–42. Kropelnicki's attorney declined to cross-examine the VE. Tr. 142.

Kropelnicki's attorney stated that she believed Kropelnicki's incontinence issues would preclude any work in the national economy. Tr. 142. Kropelnicki testified that she had experienced incontinence since her back injury in December 2016. Tr. 143. The ALJ then closed the hearing. Tr. 143–44.

The ALJ issued her decision on October 23, 2019, finding that Kropelnicki was disabled from February 7, 2017, the alleged disability onset date, through October 29, 2018, and not disabled from October 29, 2018, through the date of her decision. Tr. 28–44. The disability period from February 7, 2017, through October 29, 2018, is not in dispute.

### 3. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and

provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2018). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2018).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks, "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial

evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 4. Analysis of the ALJ's Determination

### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2018). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2018). The ALJ found that Kropelnicki had not engaged in substantial gainful activity since the disability onset date. Tr. 33. This finding is not in dispute.

### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2018) (citing 20 C.F.R § 404.1509); 20 C.F.R. § 416.920(a)(4)(ii) (2018) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic

work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2018). An impairment is *not* severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) (quoting *Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir. 2000)). If a person does not have a severe impairment, he is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c) (2018).

The ALJ correctly stated the severity standard and found that Kropelnicki's multiple disorders of the spine; mixed anxiety and depressive disorder; chronic pain disorder; sacroiliitis; status-post bariatric surgery; PTSD; failed laminectomy syndrome; somatic symptom disorder with predominant pain; and attention-deficit hyperactivity disorder were severe impairments. Tr. 33. The ALJ found Kropelnicki's right kidney hydronephrotic, nose abscess, and anemia were non-severe because they had no more than a minimal impact on Kropelnicki's ability to carry out even minimal work activity. *Id.*

Kropelnicki's severe impairments were the same throughout the alleged disability period. Tr. 38. Kropelnicki does not dispute these findings.

## C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2018); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2018). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2018); *Whitehead*, 820 F.3d at 780–81.

For the period from February 7, 2017, through October 29, 2018, the ALJ found that Kropelnicki's impairments or combination of impairments did not meet or medically equal the criteria of an impairment defined in the Listing. Tr. 33–34. The ALJ considered section 1.04 (disorders of the spine) and concluded the criteria were not met. Tr. 33. The ALJ applied the appropriate standards to find none of Kropelnicki's mental limitations rose above the level of mild or moderate limitations. *Id.* The ALJ also noted Kropelnicki had a routine and conservative treatment history with symptom improvement and no in-patient hospitalizations. *Id.* (citing Tr. 443, 449, 453, 455, 459, 520, 574, 641).

For the period from October 30, 2018, through the date of her decision, the ALJ considered listings 12.04 (depression), 12.06 (anxiety), 12.07 (somatic symptoms), and 12.11 (neurodevelopmental disorders) and concluded the criteria were not met. Tr. 39. The ALJ applied the appropriate standards and found that none of Kropelnicki's mental limitations rose above the level of mild or moderate limitations. *Id.* (citations omitted). Kropelnicki does not dispute these findings.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1) (2018). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c) (2018); *see also Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) (stating that the RFC determination is the "sole responsibility of the ALJ"). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e); 416.920(e) (2018); *see also* 20 C.F.R. § 416.945(a)(1) (2018); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). Evidence includes objective medical evidence; medical opinion; other medical evidence, such as medical history, diagnosis, and prognosis; information from the claimant or other nonmedical source; and prior administrative medical findings of state agency reviewing consultants. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2018).

The ALJ found that Kropelnicki had the following RFC from February 7, 2017, through October 29, 2018:

to perform sedentary work as defined in 20 CFR 404.1567(a) and
416.967(a) except lift and carry ten pounds occasionally and less than
ten pounds frequently. Can sit for six hours, [alternate] to standing for
three minutes after every thirty minutes of sitting; stand for two hours,
alternate to sitting for five minutes after every thirty minutes of
standing; walking for two hours, alternate to sitting for five minutes
after every thirty of walking. Can push/pull as much as can lift/carry.
The claimant can occasionally operate foot controls bilaterally; can
occasionally operate hand controls bilaterally. The claimant can
occasionally reach overhead bilaterally. For all other reaching, the
claimant can reach occasionally to the left and to the right. The claimant
can never climb ramps, stairs, ladders, ropes, or scaffolds; occasionally
balance, stoop, kneel, crouch; and never crawl. The claimant can never
work at unprotected heights; never work with moving mechanical parts;
can occasionally work operating a motor vehicle occasionally; in
humidity and wetness in extreme cold; and in vibration. The claimant
is able to perform simple, routine and repetitive tasks but not at a
production rate pace (e.g. assembly line work); is able to perform
simple work-related decisions; is able to interact with supervisors and
coworkers frequently; and is able to interact with the public
occasionally. Off task more than eleven percent of the workday.

Tr. 34. Based on the foregoing RFC, the ALJ concluded that Kropelnicki was

disabled until October 29, 2018.

In reaching the RFC, the ALJ considered "all symptoms and the extent to

which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence." Tr. 34 (citing 20 C.F.R. §§ 404.1529, 416.929

and SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017)). The ALJ considered

Kropelnicki's subjective testimony about her symptoms and included in her decision

a thorough discussion of Kropelnicki's medical records including examinations, test

results, and appointment history. Tr. 34–36. The ALJ relied on medical records

demonstrating that Kropelnicki had a history of spinal surgery, epidural steroid injections, and implantation of a spinal stimulator. Tr. 35 (citing Tr. 410–13). The ALJ also noted that Kropelnicki reported experiencing incontinence. *Id.*

The records show that Kropelnicki had a spinal cord stimulator implanted on November 13, 2017. Tr. 413. At an office visit on February 14, 2018, her pain scale was noted to be eight out of ten without medications and four to five out of ten with medications. Tr. 418. By March 14, 2018, her pain was seven out of ten with medication and two to three out of ten without medications. Tr. 420. On April 17, 2018, Kropelnicki was still experiencing "severe bilateral lower back, sciatic pain." Tr. 423. She had the spinal cord stimulator removed on August 22, 2018. Tr. 427. She then had complications from that surgery. On October 4, 2018, and October 18, 2018, the records show that the wound from the August 22, 2018 surgery would not heal. Tr. 688, 775. The court notes that on October 4, 2018, a full review of Kropelnicki's symptoms showed she had no complaints or symptoms of any kind, other than her wound that would not heal. Tr. 733–34.

At an office visit on October 29, 2018, Kropelnicki reported no pain, and her wound was reported to be healed. Tr. 744–45. No follow up appointment was scheduled. Tr. 765. Based on her improved symptoms and no reports of pain the ALJ found that Kropelnicki's medical condition had improved. Tr. 40 (citing 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i) (2018)). The ALJ then reformulated the RFC to

exclude the requirement that Kropelnicki be off task for eleven percent of the day. Tr. 40–41. With the modified RFC, the ALJ found Kropelnicki not disabled as of October 30, 2018. Tr. 43.

A person's entitlement to benefits ceases if the person experiences a medical improvement and the person is capable of substantial gainful activity. 20 C.F.R. §§ 404.1594(a), 416.994(a) (2018). Medical improvement must be based on an increase in the ability to do work. 20 C.F.R. §§ 404.1594(b)(2), 416.994(b)(2) (2018). "A determination that medical improvement related to your ability to do work has occurred does not, necessarily, mean that your disability will be found to have ended unless it is also shown that you are currently able to engage in substantial gainful activity." 20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(3) (2018). The ALJ must assess the RFC in light of the medical improvement and determine whether the person can engage in substantial gainful activity. 20 C.F.R. §§ 404.1594(b)(4), (b)(5); 416.994(b)(1)(iv), (v) (2018).

Kropelnicki disputes the ALJ's medical improvement finding. ECF No. 18, 23. Kropelnicki argues that the ALJ's finding is unsupported by substantial evidence. ECF Nos. 18 at 10–19; 23 at 1–3.

Citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), Kropelnicki argues that the ALJ's finding of medical improvement is not sufficiently explained. ECF No. 18 at 13. In *Audler*, the ALJ "summarily concluded" that the medical evidence

indicated the claimant's severe impairments did not meet or medically equal any Listing section. 501 F.3d at 448. The court found that the ALJ failed to discuss the evidence or to explain the unfavorable disability finding at step three, as required by the Social Security Act. *See id.* (citing 42 U.S.C. § 405(b)(1)). This case is not the same as *Audler*. Here, the ALJ did more than "summarily conclude[]" Kropelnicki's condition improved. The ALJ cited medical evidence which showed Kropelnicki reported no pain to her doctor and which demonstrated "no continued complications." Tr. 40 (citing Tr. 744–76).

Kropelnicki argues that medical improvement cannot be based on a single note from a single medical visit. The court disagrees. The Fifth Circuit has held that a single follow-up note may "provide[] more than a scintilla of evidence in support of a medical improvement related to the ability to do work," provided that the note actually shows a change in the claimant's medical condition. *Joseph v. Astrue,* 231 F. App'x 327, 330 (5th Cir. 2007) (noting that a physician's statement that the patient was "doing well" was not sufficient to show medical improvement, given the physician's similar notations made during the period the claimant was disabled). The medical record the ALJ relied on to find medical improvement shows a significant change in Kropelnicki's condition. As discussed, on October 4 and 18, 2018, her wound was not healed and she was in pain. By October 29, 2018, the wound was healed and she was in no pain. *Compare* Tr. 688–89, *with* Tr. 744–48. This change

in condition constitutes substantial evidence of medical improvement to trigger the ALJ's duty to re-examine the RFC.

Kropelnicki also argues that the evidence cited by the ALJ is insufficient to demonstrate that Kropelnicki would no longer be off task for eleven percent of the workday. ECF No. 18 at 14. The ALJ, however, made no such conclusion in finding medical improvement. *See* Tr. 40. The ALJ merely concluded that the medical record reflected an improvement in Kropelnicki's condition. *Id.* In accordance with the regulations, the ALJ went on to evaluate Kropelnicki's ability to do work by formulating a new RFC for the period after medical improvement occurred. *See* Tr. 40–42; *see also* 20 C.F.R. §§ 404.1594(b)(3), 416.916.994(b)(3) (2018). The court thus turns to the question of whether the reformulated RFC is supported by substantial evidence.

As mentioned, the post-October 29, 2018 RFC differs only in that Kropelnicki would no longer be off task eleven percent of the workday. *Compare* Tr. 34 *with* Tr. 40–41; *see* 20 C.F.R. §§ 404.1594(b)(3), 416.916.994(b)(3) (2018). At the hearing, Kropelnicki had testified that her incontinence required her to take frequent bathroom breaks on certain days. Tr. 138. Kropelnicki testified that her incontinence "depend[ed] on how bad the nerve pain is that day." Tr. 139. Kropelnicki testified, "[the incontinence occurred] really when the nerve pain is more is when my incontinence is worse." *Id.* Based on that testimony, the ALJ determined that until

October 29, 2018, Kropelnicki would be off task more than eleven percent of the workday. Tr. 139–40. As will be discussed, the ALJ determined that Kropelnicki's nerve pain had improved, which corresponded to an improvement in her incontinence. As a result, the off-task limitation was removed.

In support of the RFC, the ALJ cited Kropelnicki's hearing testimony at length. Tr. 41 (citing Tr. 120–31). The ALJ also cited Kropelnicki's self-completed functional report dated September 10, 2018. *Id.* (citing Tr. 347–55). The ALJ concluded that Kropelnicki's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, however, [Kropelnicki's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ relied on Kropelnicki's self-reported daily activities which included caring for her children, independently managing self-care, socializing with others outside the home, shopping in stores, driving, and preparing meals. Tr. 44 (citing 120–31, 347–55, 443).

The ALJ also discussed Kropelnicki's medical records from the relevant period which demonstrated normal physical examinations including range of motion, strength, and walking without assistance. Tr. 41 (citing Tr. 443, 641, 745). The ALJ noted that Kropelnicki has received conservative treatment and a reduction in pain medication since October 29, 2018. *Id.* (citing Tr. 432, 449). The ALJ,

however, confused Kropelnicki's statement that she plans to begin walking in the park with a friend with a report that Kropelnicki had already engaged in the activity. *Id.* (citing Tr. 443). Nevertheless, Kropelnicki's statement to her treating physician does reflect that she had begun to walk regularly. Tr. 443.

The ALJ concluded that Kropelnicki continued to suffer from a disorder of the spine, but that a "sedentary exertional restriction with additional postural limitations" was consistent with the medical record. Tr. 41. In making this finding, the ALJ reiterated that she relied heavily upon Kropelnicki's self-reported daily activities "despite her impairment." *Id.*

The ALJ also considered Kropelnicki's mental impairments. Tr. 41. The ALJ noted Kropelnicki's overall normal mental status examinations during the period. *Id.* (citing Tr. 453, 457, 459, 520, 574, 641). The ALJ also noted Kropelnicki's statements to treating sources that her symptoms had improved. *Id.* (Tr. 443, 449, 455). Kropelnicki had no significant memory problems, cognitive defects, or difficulty with self-care. *Id.* (citing Tr. 350, 459). The ALJ also relied on Kropelnicki's self-reported ability to conduct daily activities without special assistance or reminders. *Id.* (citing Tr. 347–355).

The ALJ also gave special consideration to Kropelnicki's allegations of anxiety. Tr. 42. The ALJ noted that the medical record for the relevant period showed Kropelnicki was in no acute distress with a normal mood and affect. *Id.* (citing

Tr. 457, 459, 641). The ALJ noted that Kropelnicki reported no issues with routine social interaction. *Id.* (citing Tr. 347–55, 449). The ALJ considered that Kropelnicki's self-reported difficulties must be balanced against her treating physicians' notes where she was routinely described as "alert and oriented with good judgment." *Id.* (citing Tr. 455, 457, 459, 520, 574, 641.) The ALJ also considered that the medical record showed she was consistently provided conservative treatment and was not hospitalized for mental impairments. *Id.* Nevertheless, the ALJ limited Kropelnicki's social interaction in formulating the RFC. *Id.*

The ALJ considered the medical opinion evidence provided by Pawan Grover, M.D. Tr. 42. After recounting Dr. Grover's opinions of Kropelnicki's impairments, the ALJ noted that the opinion was from the period the ALJ found Kropelnicki to be disabled. *Id.* (citing Tr. 405–25, 844–46). The ALJ determined that Dr. Grover's opinion was no longer persuasive given medical records from the relevant period including the fact that Kropelnicki had begun to walk for leisure. *Id.* (citing 443, 449, 455, 641, 745).

Kropelnicki argues that the medical record establishes that she continued to experience disabling symptoms. ECF No. 18 at 15–18. Kropelnicki's argument cites to medical records from the period during which the ALJ found Kropelnicki disabled. ECF No. 18 at 15 (citing Tr. 389, 392, 388–89, 413, 416–19, 430). The ALJ properly considered these records when she formulated the first RFC. Tr. 34–

36. The ALJ did not err by limiting her RFC formulation to the relevant period. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2018) ("We will assess your residual functional capacity based on all the *relevant evidence* in your case record.").

Kropelnicki also cites to various records submitted at the hearing which she argues demonstrate the continued complaints of pain. *See* ECF No. 18 at 15–16 (citing Tr. 67–68, 70, 73, 76, 79, 82, 85). However, the ALJ considered this evidence at the hearing and did not add it to the record based on Kropelnicki's attorney's agreement that the new evidence was cumulative. Tr. 106–08.

Kropelnicki also argues the ALJ did not properly consider a letter written by Dr. Grover on September 4, 2019, stating that he had "no intentions on releasing her back into the workforce." ECF No. 18 at 16. (citing Tr. 847). This letter is not a medical opinion and it is therefore not entitled to any special weight. *See Joseph,* 231 F. App'x at 331 (citing *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir.2003)) (refusing to consider a physician's note as medical opinion evidence where it did not contain a function-by-function analysis and merely asserted that the claimant could not work). The ALJ recognized Dr. Grover's letter did not provide a function-by-function analysis required to qualify as medical opinion evidence. Tr. 42 (citing Tr. 847); *see* 20 C.F.R. §§ 404.1513(a)(2)(i)–(iv), 416.913(a)(2)(i)(A)–(D) (2018). The ALJ was not required to articulate her consideration of Dr. Grover's letter. *See* 20 C.F.R. §§ 404.1520c, 416.920c (2018). Moreover, "the determination of any

*legal* conclusions (such as the ability to work) are reserved to the Commissioner."
*Joseph,* 231 F. App'x at 331 (*citing Frank,* 326 F.3d at 620; 20 C.F.R.
§ 404.1527(e)(1)) (emphasis in original).

Kropelnicki also argues that the ALJ did not adequately consider Dr. Grover's earlier medical opinion evidence. ECF No. 18 at 16–19. This is incorrect. The ALJ thoroughly articulated her consideration of Dr. Grover's earlier medical opinion. The ALJ found Dr. Grover's opinion somewhat persuasive for physical limitations and not persuasive for mental limitations. Tr. 36. The ALJ noted Dr. Grover's opinion was vague, not a true functional assessment, only somewhat supported by Dr. Grover's treatment notes, and not fully consistent with the overall record for the earlier period. *Id.* (citations omitted). The ALJ then re-evaluated Dr. Grover's opinion in formulating the RFC after improvement occurred. Tr. 42. The ALJ cited to the record for the relevant period which demonstrated Dr. Grover's prior opinion was no longer persuasive. *Id.* (citing Tr. 443, 449, 455, 641, 745). The ALJ explained how persuasive she found the medical opinion evidence to be based on supportability and consistency with the entire medical record. Tr. 42. The ALJ complied with the regulations. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c (2018).

Kropelnicki has not shown that she was more limited than the ALJ found her to be. The ALJ's RFC determination is legally correct and supported by substantial evidence.

## E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2018); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2018). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) (2018).

The ALJ previously determined that Kropelnicki worked as an office manager, office receptionist, nanny, and CNA. Tr. 36–37. The record demonstrates that the ALJ relied on the VE's testimony and found that Kropelnicki was not capable of performing her past relevant work based on her RFC. Tr. 42–43, 134–36. Kropelnicki does not dispute these findings.

## F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2018). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1) (2018).

The ALJ found that Kropelnicki could perform jobs that exist in significant numbers in the national economy. Tr. 43. The VE testified that an individual of Kropelnicki's age, education, and RFC would be able to work as an order clerk, address clerk, and document preparer. Tr. 43, 436. Kropelnicki's attorney declined to cross-examine the VE. Tr. 142.

Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ and Kropelnicki's attorney was given an opportunity to cross-examine the VE, it is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination). Kropelnicki does not independently dispute the ALJ's step-five findings.

The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that the findings at each of the five steps were supported by substantial evidence.

### 5. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact,

and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the final decision of the Commissioner be affirmed.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on September 5, 2022.

_____
Peter Bray
United States Magistrate Judge